IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**YANIRA VÁZQUEZ-GONZÁLEZ,**
    Petitioner,

    v.

**COMMISSIONER OF SOCIAL SECURITY**,
    Defendant.

Civil No. 19-1315 (BJM)

**OPINION AND ORDER**

    Yanira Vázquez-González ("Vázquez") seeks review of the Social Security Administration Commissioner's ("the Commissioner's") finding that she is not entitled to disability benefits under the Social Security Act ("the Act"), 42 U.S.C. § 423. Vázquez contends that the administrative law judge ("ALJ") erred in finding (1) that Vázquez's mental impairment does not meet a listing, (2) that Vázquez has the residual functional capacity ("RFC") to perform light work, and (3) that Vázquez can perform jobs that existed in significant numbers in the national economy. Docket No. ("Dkt.") 14. The Commissioner opposed. Dkt. 15. This case is before me by consent of the parties. Dkt. 17, 19. For the reasons set forth below, the Commissioner's decision is **AFFIRMED**.

**STANDARD OF REVIEW**

    After reviewing the pleadings and record transcript, the court has "the power to enter a judgment affirming, modifying, or reversing the decision of the Commissioner." 20 U.S.C. § 405(g). The court's review is limited to determining whether the Commissioner and his delegates employed the proper legal standards and found facts upon the proper quantum of evidence. *Manso-Pizarro v. Secretary of Health & Human Services*, 76 F.3d 15, 16 (1st Cir. 1996). The Commissioner's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C.§ 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts. *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999); *Ortiz v. Secretary of Health & Human Services*, 955 F.2d 765, 769 (1st Cir. 1991). Substantial evidence means "'more than a mere scintilla.' . . . It means—and means only—'such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)) (internal citation omitted). The court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." *Rodríguez Pagán v. Secretary of Health & Human Services*, 819 F.2d 1, 3 (1st Cir. 1987).

A claimant is disabled under the Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Under the statute, a claimant is unable to engage in any substantial gainful activity when he "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). In determining whether a claimant is disabled, all of the evidence in the record must be considered. 20 C.F.R. § 404.1520(a)(3).

The Commissioner employs a five-step evaluation process to decide whether a claimant is disabled. 20 C.F.R. § 404.1520; *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Goodermote v. Secretary of Health & Human Services*, 690 F.2d 5, 6-7 (1st Cir. 1982). At step one, the Commissioner determines whether the claimant is currently engaged in "substantial gainful activity." If so, the claimant is not disabled. 20 C.F.R. § 404.1520(b). At step two, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 404.1520(c). If not, the disability claim is denied. At step three, the Commissioner must decide whether the claimant's impairment is equivalent to a specific list of impairments contained in the regulations' Appendix 1, which the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(d); 20 C.F.R. § 404, Subpt. P, App. 1. If the claimant's impairment meets or equals one of the listed impairments, he is conclusively presumed to be disabled. If not, the evaluation proceeds to the fourth step, through

which the ALJ assesses the claimant's RFC and determines whether the impairments prevent the claimant from doing the work he has performed in the past.

An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. 20 C.F.R. § 404.1520(e) and 404.1545(a)(1). If the claimant can perform his previous work, he is not disabled. 20 C.F.R. § 404.1520(e). If he cannot perform this work, the fifth and final step asks whether the claimant can perform other work available in the national economy in view of his RFC, as well as age, education, and work experience. If the claimant cannot, then he is entitled to disability benefits. 20 C.F.R. § 404.1520(f).

At steps one through four, the claimant has the burden of proving he cannot return to his former employment because of the alleged disability. *Vázquez v. Secretary of Health & Human Services*, 944 F.2d 1, 5 (1st Cir. 1991). Once a claimant has done this, the Commissioner has the burden under step five to prove the existence of other jobs in the national economy the claimant can perform. *Ortiz v. Secretary of Health & Human Services*, 890 F.2d 520, 524 (1st Cir. 1989).

Additionally, to be eligible for disability benefits, the claimant must demonstrate that his disability existed prior to the expiration of his insured status, or his date last insured. *Cruz Rivera v. Secretary of Health & Human Services*, 818 F.2d 96, 97 (1st Cir. 1986).

## BACKGROUND

The following facts are drawn from the transcript ("Tr.") of the record of proceedings.

Vázquez was born on September 12, 1977. Tr. 205. She completed two years of college and began a career in nursing. Tr. 44, 216-17, 346. In December 2010, Vázquez stopped working because the funding for her position had ended. Tr. 46-48. She tried to find another job, but she developed certain health issues—weakness, tiredness, swelling, and, as she described them, "some weird symptoms." Tr. 48. She underwent a hysterectomy, believing that procedure would help her, but her symptoms continued. Tr. 49. Eventually, she would be diagnosed with fibromyalgia and depression, and she would not return to work. Tr. 50, 205.

On January 29, 2014, Vázquez applied for disability benefits, claiming an onset date of May 28, 2012. Tr. 23. The Commissioner denied Vázquez's claim initially, on reconsideration, and

after a hearing before an ALJ. Tr. 23. The record before the Commissioner, which included medical evidence and Vázquez's self-reports, is summarized below.

Vázquez sought treatment for pain both with a primary care physician, Dr. Castro, and a rheumatologist, Dr. Vila. Tr. 51-52, 404. On March 19, 2013, Vázquez visited Dr. Vila, complaining of lower extremity pain, swelling, morning stiffness, and sleep problems. Tr. 401-02. Dr. Vila found neurological and musculoskeletal abnormalities, identified fourteen of eighteen tender points, and reported both myalgia and arthralgia. Tr. 402. Although records are largely illegible, Dr. Vila would eventually diagnose fibromyalgia, prescribe various medications, and report that Vázquez suffered from migraines, fatigue, leg pain, swelling, and stiffness. Tr. 396-401.

Treatment records from Vázquez's primary care physician show ongoing treatment for pain from 2013 into 2017 and diagnoses of fibromyalgia and depression. *See, e.g.,* Tr. 112-13, 137. Frequently, physical examination findings were normal. *See, e.g.,* Tr. 112-13, 138, 143-44, 147. On various visits, however, doctors indicated that Vázquez's extremities, Tr. 129, 131, 136-37, 139, genitourinary system, Tr. 129, 130, abdomen, Tr. 130-31, and skin, Tr. 148-49, were abnormal. Physicians also frequently reported that Vázquez requires assistance to perform activities of daily living. *See, e.g.*, Tr. 115-16, 118, 123-24, 126, 128, 133, 135. Records dated September 30, 2015 and October 7, 2015 show that Vázquez needed assistance with getting dressed, showering, going to the bathroom, transference, continence, and feeding, and that she described her pain as a five on a scale from zero to five. Tr. 126, 128.

On June 18, 2014, Vázquez visited Dr. Carlos Maldonado Acevedo ("Dr. Maldonado") for a consultative examination. Tr. 403. Examination records show complaints of head or neck pain, sinusitis, calf pain, leg pain, cramps with ambulation, joint pain, lower back pain, headaches, dizziness, balance problems, fibromyalgia, depression, anxiety, and insomnia. Tr. 404-08. Dr. Maldonado found that Vázquez's gait was normal, and she could walk without difficulty, though she used a cane. Tr. 404, 409. Vázquez's thorax was symmetrical with good expansion, and her spine was straight. Tr. 411. Her extremities had good muscle tone, range of movement, and reflexes, but Dr. Maldonado encountered significant muscle resistance while evaluating Vázquez's

back and legs. Tr. 412. He found no evidence of joint enlargement, effusion, inflammation, pain, swelling, tenderness, stiffness, anatomical abnormality, or neurological deficits. Tr. 412-13. Dr. Maldonado also found no abnormalities in the knee and back, aside from muscle resistance, and he described Vázquez's musculoskeletal system as otherwise normal. *Id.* He also noted that Vázquez was cooperative, communicative, and oriented with good eye contact and good personal hygiene. Tr. 404, 409. At the time of the examination, Vázquez was taking Gabapentin, Venlafaxine, Clonozepam, Trazodone, Estazolam, and Chlorpromazine. Tr. 404. Dr. Maldonado diagnosed Vázquez with depression and back arthralgia. Tr. 413.

On July 9, 2014, non-examining state agency physician Dr. Eileen Zayas ("Dr. Zayas") reviewed the record. Tr. 213. Dr. Zayas determined that Vázquez could lift fifty pounds occasionally and twenty-five pounds frequently, sit for six hours in an eight-hour workday, and stand and/or walk for six hours in an eight-hour workday. Tr. 212-13. Dr. Cindy Ramirez Pagan ("Dr. Ramirez") affirmed these findings on November 24, 2014. Tr. 228-29.

The record also contains evidence of treatment for a mental impairment. Vázquez began seeking psychiatric treatment with Dr. Pedro Oyola Nieves ("Dr. Oyola") in November 2013. Tr. 428. Treatment notes from late 2013 through early 2017 show that Vázquez was depressed and anxious, listless, and suffering from thoughts of self-deprecation, uselessness, and hopelessness. Tr. 189-204. She could not pay attention, focus, or concentrate. *Id.* Although her recent and remote memory were generally intact, her immediate memory was diminished. *Id.* During the course of treatment, Dr. Oyola prescribed Effexor, Klonopin, and Thorazine, and described Vázquez's response to that medication as moderate. Tr. 428. Treatment made her drowsy and restless. Tr. 188, 191.

On March 12, 2014, Dr. Oyola prepared a psychiatric report. Tr. 428. He diagnosed Vázquez with major depression, single episode, severe, without psychotic features, and assigned

her a GAF score of 50/45.[1] Tr. 429. He reported that Vázquez spends most of her day seated or in bed watching television and that she had "a short attention span for everything." Tr. 428. Vázquez relied on others to perform her household tasks and shopping, to take her places in a private car, and to help with personal care. Tr. 428. She did not participate in community activities and had superficial and avoidant relationships with neighbors and friends. Tr. 428. Dr. Oyola reported that Vázquez was neat with good personal hygiene, cooperative, frank, alert, and oriented. Tr. 428-29. She spoke at a low volume in a pleasant, clear voice, though her speech production was scarce and her response time slow with hesitation. Tr. 429. There were frequent periods of silence. Tr. 428. Vázquez was sad and tearful, with a quite depressed and anxious mood and an appropriate affect. Tr. 428-29. Her thought process was logical and coherent without abnormal associations. Tr. 429. She was able to abstract answers from proverbs, found similarities between two of six different pairs of words, and associated zero of five pairs of opposites. Tr. 429. Dr. Oyola found no evidence of obsessions, compulsions, phobias, suicidal or homicidal ideation, self-destructive impulses, delusions, or unreality, but he reported ideas of self-deprecation, hopelessness, uselessness, and strong guilt due to inability to work. Tr. 429. Vázquez could not maintain attention, she was unable to recite months and weekdays backwards, and she could not subtract threes from thirty. Tr. 429. She could recall the place and date she was born, what she did yesterday, and how she arrived to the office. Tr. 429. However, she could not recall any second words of five pairs. Tr. 429. Although

---

[1] "GAF is a scale from 0 to 100 used by mental health clinicians and physicians to subjectively rate the social, occupational, and psychological functioning of adults.'" *Hernández v. Comm'r of Soc. Sec.*, 989 F. Supp. 2d 202, 206 f.n. 1 (D.P.R. 2013) (quoting Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. text rev. 2000) (DSM–IV–TR)). "A GAF of 41-50 indicates 'serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifiting) OR moderate difficulty in social, occupations, or school functioning (e.g., no friends, unable to keep a job).'" *López-López v. Colvin*, 138 F. Supp. 3d 96, 100 f.n. 6 (D. Mass. 2015) (quoting DSM-IV-TR at 34).

The SSA's administrative memorandum AM-13066 advises adjudicators that a GAF score should not be dispositive of impairment severity. GAF scores were discontinued in the current Diagnostic and Statistics Manual of Mental Disorders (5th edition) ("DSM-V"), which was published in 2013. Because the GAF scores are no longer used in the DSM-V, the SSA directed adjudicators through the AM-13066 to continue receiving and considering GAF scores as they would with other opinion evidence, but explained that the score must have supporting evidence to be given significant weight. *Valentín-Incle v. Comm'r of Soc. Sec.*, Civ. No. 15-2137 (MEL), 2018 U.S. Dist. LEXIS 215060, 2018 WL 6721340, at *10 n.2 (D.P.R. Dec. 19, 2018) (citations omitted).

Dr. Oyola described Vázquez's judgment as adequate and she had insight into her mental and physical problems, he found that her intelligence was less than expected for her age and level of education. Tr. 429. Ultimately, he opined that Vázquez's prognosis was poor, she could not complete even thirty minutes of a normal day's work, and she could not deal with supervisors. Tr. 429. She could, however, handle her funds. Tr. 429. Dr. Oyola offered the same opinion in psychiatric reports dated September 14, 2014 and March 20, 2017. Tr. 472, 519.

On June 24, 2014, Vázquez visited Dr. José Ríos Robles ("Dr. Ríos"), a psychiatrist, for a consultative evaluation. Tr. 418. Vázquez reported to Dr. Ríos that her mother prepares her meals, performs household tasks, and takes her kids to school for her, though she required no help to shower or get dressed. Tr. 419. Dr. Ríos noted that Vázquez ambulated without difficulty. Tr. 419. She was poorly groomed with a depressed mood, poor self-attitude, and poor vital sense. Tr. 419. Still, she was cooperative and made good eye contact. Tr. 419. Her thoughts were concrete, affect blunted, judgment good, and insight fair. Tr. 419. She reported no suicidal or homicidal ideation and no passive death wishes. Tr. 419. Dr. Ríos noted that Vázquez used simple vocabulary, and he found that her intelligence was on the lower end of average. Tr. 419. She scored a one out of three on a concentration test, a three out of five on an immediate recall test, and a zero out of five after five minutes. Tr. 419. However, she remembered what she had for dinner the night before and her home address while growing up. Tr. 419. Dr. Ríos diagnosed Vázquez with major depressive disorder, single episode, severe, with anxiety features and found that Vázquez could not manage her funds. Tr. 420.

On July 1, 2014, non-examining state agency psychologist Dr. Wanda De Cardona ("Dr. Cardona") reviewed the record. Tr. 211. Dr. Cardona considered Listing 12.04, for affective disorders, finding that Vázquez had moderate limitations with respect to the following: restriction of activities of daily living; difficulties in maintaining social functioning; and difficulties in maintaining concentration, persistence, or pace. Tr. 211. She had no repeated episodes of decompensation, each of extended duration. Tr. 211. Dr. Cardona also identified moderate limitation in the following areas: the ability to remember locations and work-like procedures; to

understand and remember detailed instructions; to carry out detailed instructions; to maintain attention and concentration for extended periods; to work in coordination with or in proximity to others without being distracted by them; to complete a normal workday and workweek without interruptions from psychologically-based symptoms; to perform at a consistent pace without an unreasonable number and length of rest periods; to interact appropriately with the general public; to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; to respond appropriately to changes in the work setting; to travel in unfamiliar places or use public transit; and to set realistic goals or make plans independently of others. Tr. 213-15. Dr. Cardona found that Vázquez was not significantly limited with respect to the following: the ability to carry out very short and simple instructions; to perform activities within a schedule, maintain regular attendance, or be punctual within customary tolerances; to sustain an ordinary routine without special supervision; to make simple work-related decisions; to ask simple questions or request assistance; or to be aware of normal hazards and take appropriate precautions. Tr. 214-15. Additionally, Dr. Cardona determined that Vázquez's statements about her symptoms were not substantiated by the objective medical evidence: she found Vázquez only partially credible because there was no history of psychiatric hospitalization or decompensation suggesting a more severe emotional condition. Tr. 212. Dr. Cardona also discussed the evidence from Dr. Oyola and Dr. Ríos, noting that Dr. Oyola had found Vázquez capable of managing her funds while Dr. Ríos found otherwise. Tr. 216. Ultimately, she found that, although Vázquez's mental impairment impacts her concentration, memory, and capacity to understand, remember, and execute simple instructions, Vázquez could maintain attention, sustain concentration for at least two hours, adapt to changes, and interact with others. Tr. 216.

On November 21, 2014, Dr. Russell Phillips ("Dr. Phillips") largely affirmed Dr. Cardona's opinion, except he determined that Vázquez was markedly limited in her ability to carry out detailed instructions. Tr. 230. He found that Vázquez could maintain attention for two hours at a time and persist at simple tasks over eight- and forty-hour periods with normal supervision. Tr.

230. However, she could not persist at more complex tasks over time. Tr. 230. Dr. Phillips also determined that Vázquez could tolerate the minimum social demands of simple-task settings, tolerate simple changes in routine, avoid hazards, travel independently, and make and carry out simple plans. Tr. 230-31.

On April 3, 2017, Vázquez appeared for a hearing before an ALJ where she was represented by counsel. Tr. 38. She testified that her symptoms of fibromyalgia and depression had significantly limited her functioning. *See, e.g.*, Tr. 51. She was depressed, frustrated, fatigued, and in pain all the time. Tr. 51-55. She used to be able to clean the whole house, wash the windows, and mop the floor, but now she could only lay in bed all day. Tr. 51-53. As she explained, fibromyalgia caused her to feel pain in her entire body all the time. Tr. 53, 55. She also experienced migraines two to three times per week and once visited the emergency room because of a migraine. Tr. 58. Vázquez described her pain as a ten on a scale of zero to ten. Tr. 53. Because of an aspirin allergy, she could not take the medication associated with her condition, and what doctors could give her did not help. Tr. 51, 54. To handle the pain, she needed to change positions, including while sleeping. Tr. 54. She could sit for twenty-five minutes and stand for twenty-five minutes. Tr. 54. She cannot bend to pick something up, wash, or put on shoes because of her pain. Tr. 62. Vázquez also testified that she lives with her two daughters, aged 15 and 19, who take care of the housework. Tr. 42, 44, 61. During the day, Vázquez's daughter prepares her breakfast and brings it to her, along with her medications. Tr. 59. Vázquez stays in her room. Tr. 59. She can turn on the television "to not feel too much loneliness," but she cannot focus. Tr. 61. She will feel a mental cloudiness and experience mental blanks. Tr. 61. When her daughter returns from school, she prepares Vázquez's food and medication and then brings it to her. Tr. 59. Her daughter has to make sure she takes her medications because she will forget. Tr. 59. She takes Flexeril, Cymbalta, Klonopin, Elavil, Trazadone, Restoril, and Remeron. Tr. 60-61. Vázquez also explained that she no longer had a driver's license, and she had stopped driving due to forgetfulness. Tr. 43. When she needs to go somewhere, a relative or friend will drive her. Tr. 44. Her mother and daughters

buy her food because she cannot walk for a long time in the supermarket, and it annoys her to talk with other people. Tr. 64.

A vocational expert ("VE") also testified. Tr. 64-69. The VE testified that a hypothetical person of Vázquez's age, education, and experience could work certain jobs if she could lift and carry twenty pounds occasionally and ten pounds frequently; sit, stand, and walk for six hours of an eight-hour workday (with a need to alternate positions at will); push and pull as much as she could lift and carry; frequently perform postural movements; and occasionally drive a motor vehicle. Tr. 65-67. Such an individual, even with additional mental limitations, could perform the work of an electronics worker, a final inspector, or an assembler of electrical accessories. Tr. 67. A hypothetical person with the same limitations as the first, except that she could stand and walk for four hours in a normal workday, could not perform those jobs. Tr. 67. However, she could perform the work of an addresser, a lens inserter, or a final assembler. Tr. 68.

The ALJ announced her decision on August 17, 2017. Tr. 33. She determined that Vázquez had not engaged in substantial gainful activity from May 28, 2012 (her alleged onset date) through December 31, 2016 (her date last insured). Tr. 25. She found that Vázquez had the following severe impairments: fibromyalgia and major depressive disorder. *Id.* Neither of these impairments, however, met or equaled a listing. Tr. 26. In reaching this conclusion, the ALJ considered Listing 12.04 and the "paragraph B" criteria, finding that Vázquez had moderate limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing herself. Tr. 26-27. The ALJ then made the following RFC determination:

> [T]he claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) (lift/carry, push/pull up to 20 pounds occasionally and 10 pounds frequently; sit for 6 hours)[2] except the claimant is limited to standing for 4 hours and

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b). Individuals capable of performing light work can also perform sedentary work, "unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." *Id.*

>walking for 4 hours total in an 8-hour workday, and requires the ability to alternate positions at will without loss of production. The claimant is limited to frequent balancing, kneeling, stooping, crouching, crawling, and climbing ladders, ropes, scaffolds, ramps and stairs. The claimant is limited to occasional operation of a motor vehicle, and occasional exposure to weather and extreme cold. She is limited to simple, routine work that is not a production rate pace, such as work that imposes quotas or is on an assembly line. She is not able to work in tandem with others and no one should depend upon her completion of tasks and vice versa. She is limited to simple work-related decisions and is able to respond appropriately on a frequent basis to coworkers and the public. Time off task can be accommodated by normal breaks.

Tr. 28. In making this RFC determination, the ALJ gave great weight to the opinions of the state agency psychological consultants, little weight to the psychiatric consultative examiner, and no weight to the treating psychiatrist. Tr. 29-30. She also gave great weight to the physical consultative examiner and partial weight to the state agency medical consultants. Tr. 31.

Next, the ALJ determined that Vázquez could not perform her past relevant work as a nurse aid or practical nurse. Tr. 31. Nonetheless, in light of VE testimony, Vázquez could perform work as an electronics worker, final inspector, or assembler of electrical accessories. Tr. 32. Accordingly, the ALJ found that Vázquez was not disabled under the Act. Tr. 33.

The Appeals Council denied review, Tr. 3, and this action followed.

## DISCUSSION

Vázquez argues the ALJ erred when she found (1) that Vázquez's mental impairment does not meet Listing 12.04, (2) that Vázquez can perform light work, and (3) that Vázquez can perform jobs existing in significant numbers in the national economy. I will address each argument in turn.

To meet a listing, an impairment must meet all the medical criteria of the listing; an impairment that manifests only some of those criteria, no matter how severely, does not qualify. *Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990). To meet or equal Listing 12.04, which governs depressive, bipolar, and related disorders, a claimant must satisfy the criteria in 12.04(A) & (B), or 12.04(A) & (C).[3] 20 C.F.R., Pt. 404, Subpt. P, App. 1, 12.04. Here, Vázquez has expressly

---

[3] The Commissioner revised Listing 12.04 in 2016, and these revisions became effective on January 17, 2017 for any pending claims. *See* Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed.

challenged only the ALJ's decision as it relates to paragraph B, although her argument also implicitly challenges the ALJ's finding as to paragraph C. I will address both paragraphs.[4]

To satisfy the paragraph B criteria, a claimant's disorder must result in an extreme limitation of one area, or marked restrictions in two of the following areas:

1. Understand, remember, or apply information;

2. Interact with others;

3. Concentrate, persist, or maintain pace; and/or

4. Adapt or manage oneself.

20 C.F.R., Pt. 404, Subpt. P, App. 1, 12.04. A claimant has a "moderate limitation" if his functioning in an area is "fair." *Id.* at 12.00. "Marked limitation" means a claimant's functioning is "seriously limited." *Id.* And "extreme limitation" means a claimant cannot function in an area "on a sustained basis." *Id.*

The ALJ found that Vázquez has moderate limitations in each of the four areas named above. This determination is supported by the opinions of Dr. Cardona and Dr. Phillips, as well as portions of the assessments by Dr. Oyola and Dr. Ríos. *See Evangelista v. Secretary of Health & Human Servs.*, 826 F.2d 136, 144 (1st Cir. 1987) (explaining that a judge may "piece together the relevant medical facts from the findings and opinions of multiple physicians").

Dr. Cardona determined that Vázquez had moderate limitations in several areas of mental functioning and no significant limitations in various others. In reaching this conclusion, she provided a detailed account of her reasoning. She reviewed evidence from Dr. Oyola and Dr. Ríos as well as Vázquez's self-reports. Dr. Cardona determined that Vázquez's described functional limitations were "credible but not to the degree alleged," as there was "no history of decompensation or psychiatric hospitalization [] suggesting a more severe emotional condition." Tr. 216. She also identified an inconsistency in the medical evidence, noting that Dr. Ríos found

---

Reg. 66138, 66139 (Sept. 26, 2016). Therefore, the revised listings applied when the ALJ issued her decision on August 17, 2017.

[4] The ALJ makes no findings regarding paragraph A. I assume she found that Vázquez's mental impairment met the requirements of that subpart.

that Vázquez could not manage her funds, although Dr. Oyola found otherwise. *Id.* Such analysis suggests that Dr. Cardona performed a thoughtful review.

After this review, Dr. Cardona concluded that Vázquez was moderately limited with respect to the following: activities of daily living; difficulties in maintaining social functioning; difficulties in maintaining concentration, persistence, or pace; the ability to remember locations and work-like procedures; to understand and remember detailed instructions; to carry out detailed instructions; to maintain attention and concentration for extended periods; to work in coordination with or in proximity to others without being distracted by them; to complete a normal workday and workweek without interruptions from psychologically-based symptoms; to perform at a consistent pace without an unreasonable number and length of rest periods; to interact appropriately with the general public; to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; to respond appropriately to changes in the work setting; to travel in unfamiliar places or use public transit; and to set realistic goals or make plans independently of others. Tr. 211-15. Further, Dr. Cardona found that Vázquez was not significantly limited with respect to her ability to carry out very short and simple instructions; perform activities within a schedule, maintain regular attendance, or be punctual within customary tolerances; sustain an ordinary routine without special supervision; make simple work-related decisions; ask simple questions or request assistance; and be aware of normal hazards and take appropriate precautions. Tr. 214-15. She never found that Vázquez suffered from marked or extreme limitation in any area. Rather, Dr. Cardona explained that, although Vázquez's mental impairment impacts her concentration, memory, and capacity to understand, remember, and execute simple instructions, she could nonetheless maintain attention, sustain concentration for at least two hours, adapt to changes, and interact with others. Tr. 216. Her opinion thus supports the ALJ's finding that Vázquez is moderately limited in the four areas relevant to paragraph B.

Dr. Phillips' assessment provides further support for the ALJ's findings, as he largely agreed with Dr. Cardona, although he identified marked limitations in Vázquez's ability to carry

out detailed instructions. Tr. 230. This finding would support greater limitation in the area of understanding, remembering, or applying information than the ALJ ultimately adopted. However, in light of the other record evidence, including Dr. Cardona's findings, the ALJ was not required to make such a finding. *See Seavey v. Barnhart*, 276 F.3d 1, 10 (1st Cir. 2001) ("[T]he responsibility for weighing conflicting evidence, where reasonable minds could differ as to the outcome, falls on the Commissioner and his designee, the ALJ.").

Indeed, among Dr. Ríos's observations are those that indicate moderate limitations, at least with respect to some of the paragraph B criteria. He observed that Vázquez was cooperative and made good eye contact, and he found her judgment to be good and insight fair. Tr. 419. These findings are consistent with a finding that Vázquez's ability to interact with others was at least fair. *See also* Tr. 404, 409 (observation by Dr. Maldonado that Vázquez was cooperative, communicative, and oriented with good eye contact and good personal hygiene). Dr. Ríos also found that Vázquez had unimpaired remote memory and concrete thought processes; that her intelligence was on the lower end of *average*; and that she displayed no evidence of hallucinations, phobias, or suicidal or homicidal ideation. Tr. 419. Again, these findings are consistent with a conclusion that Vázquez has moderate limitation in several areas of mental functioning. Likewise, Dr. Oyola reported that Vázquez was neat with good personal hygiene, cooperative, frank, alert, and oriented. Tr. 428-29. Although she addressed Dr. Oyola slowly and at a low volume, she used a pleasant, clear voice. Tr. 429. Dr. Oyola found no evidence of obsessions, compulsions, phobias, suicidal or homicidal ideation, self-destructive impulses, delusions, or unreality, and he described Vázquez's thought process as logical and coherent without abnormal associations. Tr. 429. Additionally, Vázquez's judgment was adequate, and she had insight into her mental and physical problems. Tr. 429. She could recall the place and date she was born, what she did yesterday, and how she arrived to the office, and she could abstract answers from proverbs. Tr. 429. Further, she could manage her funds. Tr. 429. All these findings corroborate Dr. Cardona's assessment and the ALJ's finding that Vázquez is moderately limited in the paragraph B areas.

Of course, Dr. Oyola's opinion also would have supported a more severe limitation in at least some of the paragraph B criteria. He frequently reported that Vázquez could not maintain attention. Tr. 429. She was unable to recite months and weekdays backwards, and she could not subtract threes from thirty. Tr. 429. Nor could she recall any second words of five pairs, and she associated zero of five pairs of opposites. Tr. 429. These findings might suggest greater limitation in concentration, persistence, and pace or the ability to understand, remember, or apply information. Further, Dr. Oyola found that Vázquez could not deal with supervisors, she had superficial and avoidant relationships, and she was sad and tearful with quite a depressed affect, Tr. 428, all of which might have supported a finding of greater limitation in Vázquez's ability to interact with others. Portions of Dr. Ríos's report also might have supported more serious limitations. *See, e.g.*, Tr. 418-19 (reporting that Vázquez was poorly groomed, had poor self-attitude, and poor vital sense; that she scored a one out of three on a concentration test and a zero out of five on an immediate recall test after five minutes; and that she could not manage her own funds).

The relevant question, however, is not whether the ALJ could have found marked or extreme limitations in the paragraph B areas, but whether the ALJ's finding that Vázquez had moderate limitations in these areas is supported by substantial evidence. *Evangelista*, 826 F.2d at 144 (quoting *Rodriguez Pagan v. Secr'y of Health and Human Servs.*, 819 F.2d 1, 3 (1st Cir. 1987)) ("'[E]ven if the record arguably could justify a different conclusion,'" the court must affirm "'so long as [the Commissioner's decision] is supported by substantial evidence.'"). Here, Dr. Cardona's and Dr. Phillips' opinions, along with other portions of the record, provide substantial evidence in support of the ALJ's paragraph B conclusions. Admittedly, the ALJ's determination relies primarily on findings of non-examining state agency physicians. However, where, as here, those findings are detailed and supported by other portions of the record, they provide substantial evidence in support of the Commissioner's decision. *See Berrios Lopez v. Sec'y of Health & Human Servs.*, 951 F. 2d 427, 431 (1st Cir. 1991) (affirming a non-treating doctor's medical opinion as substantial evidence); *Agron–Bonilla v. Comm'r. of Soc. Sec.*, Civil No. 08-2111 (DRD)(JA) 2009

WL 4670538, at *5 (D.P.R. 2009) (affirming ALJ denial of benefits that relied on opinions of non-treating state agency physicians).

Vázquez also implicitly challenges the ALJ's decision at paragraph C of Listing 12.04 by arguing that the ALJ incorrectly found that her mental disorder had not lasted at least two years.

To meet paragraph C, a mental disorder must be "serious and persistent." 20 C.F.R., Pt. 404, Subpt. P, App. 1, 12.04. There must be "a medically documented history of the existence of the disorder over a period of at least 2 years" and evidence of both:

> 1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of [the claimant's] mental disorder (see 12.00G2b); and
>
> 2. Marginal adjustment, that is, [the claimant has] minimal capacity to adapt to changes in [his or her] environment or to demands that are not already part of [his or her] daily life (see 12.00G2c).

*Id.* Vázquez correctly points out that the ALJ erred in concluding that her depressive disorder had not existed over a period of at least two years. Indeed, treatment records show that Dr. Oyola treated Vázquez for her mental impairment beginning in November 2013 and into 2017. Tr. 189, 204, 428, 519. This error, however, does not require remand. Even if the ALJ had correctly determined that Vázquez's mental impairment existed over a period of at least two years, her determination related to "marginal adjustment" is nonetheless supported by substantial evidence. As explained above, substantial evidence supports a finding that Vázquez is moderately limited in her ability to adapt or manage herself. In other words, Dr. Cardona's and Dr. Philips's opinions, coupled with other consistent record evidence, provide substantial evidence in support of the ALJ's determination that Vázquez has a fair, as opposed to minimal, capacity for adaptation.

In sum, substantial evidence supports the ALJ's determination that Vázquez's mental impairment does not meet or equal Listing 12.04.

Next, Vázquez argues that the ALJ erred in finding that she has the RFC to perform light work. According to Vázquez, the record is devoid of any medical evidence to support the ALJ's

physical RFC finding. Instead, she maintains that evidence provided by Dr. Oyola, Dr. Maldonado, and Vázquez show that Vázquez is incapable of performing even sedentary work.

RFC is the most a claimant can do despite his or her limitations. 20 C.F.R. § 416.945(a)(1). An RFC assessment is "ultimately an administrative determination reserved to the Commissioner." *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007) (citing 20 C.F.R. §§ 416.927(e)(2), 416.946). But because "a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Id.* The ALJ must weigh all the evidence and make certain that his or her conclusion rests upon clinical examinations as well as medical opinions. *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 28, 224 (1st Cir. 1981). However, the claimant is responsible for providing the evidence of an impairment and its severity; and the ALJ is responsible for resolving any evidentiary conflicts and determining the claimant's RFC. 20 C.F.R. § 404.1545(a)(3); *see also Tremblay v. Sec'y of Health & Human Servs.*, 676 F.2d 11, 12 (1st Cir. 1982) (*citing Richardson v. Perales*, 402 U.S. 389 (1971)).

The ALJ made the following physical RFC determination:

> [T]he claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) (lift/carry, push/pull up to 20 pounds occasionally and 10 pounds frequently; sit for 6 hours) except the claimant is limited to standing for 4 hours and walking for 4 hours total in an 8-hour workday, and requires the ability to alternate positions at will without loss of production. The claimant is limited to frequent balancing, kneeling, stooping, crouching, crawling, and climbing ladders, ropes, scaffolds, ramps and stairs. The claimant is limited to occasional operation of a motor vehicle, and occasional exposure to weather and extreme cold.

Tr. 28. In arriving at this conclusion, the ALJ gave great weight to the evidence from Dr. Maldonado and partial weight to state agency consultants, Drs. Zayas and Ramirez. She also gave due consideration to treatment records and Vázquez's self-reports.

The ALJ's finding that Vázquez can perform a limited range of light work is supported by the opinions of Drs. Zayas and Ramirez, both of whom determined that Vázquez could lift fifty pounds occasionally and twenty-five pounds frequently, sit for six hours in an eight-hour workday, and stand and/or walk for six hours in an eight-hour workday and that she had no limitation regarding pushing, pulling, posture, or manipulation. Tr. 212-13, 228-29. These opinions,

consistent with a finding of medium work, also support a finding that Vázquez can perform light work. *See* 20 C.F.R. § 404.1567(c) ("Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, [the Commissioner] determine[s] that he or she can also do sedentary and light work.").

Dr. Maldonado's findings provide further support for the conclusion that Vázquez can perform light work. Results of his examination were largely normal. Dr. Maldonado found that Vázquez's gait was normal, and she had no difficulty walking with a one-point cane. Tr. 404, 409; *see also* Tr. 419 (report by Dr. Ríos noting that Vázquez ambulated without difficulty). Her thorax was symmetrical with good expansion, and her extremities had good muscle tone, range of movement, and reflexes. Tr. 412. He found no evidence of joint enlargement, effusion, inflammation, pain, swelling, tenderness, stiffness, anatomical abnormality, or neurological deficits. Tr. 412-13. The only abnormality he noted was muscle resistance encountered while evaluating Vázquez's back and legs, but he described Vázquez's musculoskeletal system as otherwise normal. Tr. 412-13. Although Vázquez is correct that Dr. Maldonado did not make specific findings regarding her ability to lift or carry things, stand, walk, or sit, Drs. Zayas and Ramirez reviewed Dr. Maldonado's findings and offered opinions consistent with those findings.

Vázquez also contends that a finding of light work is unsupported because Dr. Oyola opined that Vázquez could not complete one-half hour of a normal day's work. Dr. Oyola, who is a psychiatrist, appears to have been opining on Vázquez's mental limitations rather than her physical capabilities. Regardless, his opinion reflects a conflict in the evidence, running contrary to the opinions of Drs. Zayas and Ramirez as well as Dr. Maldonado's largely normal findings, and it is the ALJ's duty to resolve such conflicts. Here, I detect no error in the ALJ's decision not to credit Dr. Oyola's opinion regarding Vázquez's capacity to work.

Nor did the ALJ err in considering Vázquez's testimony regarding her own functional limitations. The ALJ considered Vázquez's testimony regarding her pain, her migraines, her dependence on others, and her need to change positions after sitting or standing for twenty-five

minutes. Tr. 29. Although the ALJ credited Vázquez's testimony insofar as she found that Vázquez's impairments could reasonably cause her symptoms, she also found that Vázquez's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the other record evidence. Tr. 29. As the ALJ explained, although Vázquez was diagnosed with fibromyalgia, examination findings were often normal, as were Dr. Maldonado's findings. Tr. 30. Moreover, the ALJ accounted for Vázquez's pain by adopting an RFC for light work, rather than the medium work recommended by Drs. Zayas and Ramirez. Tr. 31.

As with her mental impairment, the evidence regarding Vázquez's physical impairment and its limiting effects is somewhat conflicted. However, the ALJ considered treatment records, the consultative examinations, Vázquez's self-reports, and the opinion evidence, and consistent with her duties, determined issues of credibility, drew inferences from the record evidence, and resolved conflicts in the evidence. *Evangelista*, 826 F.2d at 141. After thoroughly and carefully reviewing the record, I find that there is substantial evidence to support the ALJ's RFC finding.

Finally, Vázquez argues that the ALJ erred by finding that there were jobs in significant numbers in the national economy that she could perform. In raising this argument, Vázquez essentially rehashes her argument that the ALJ's RFC determination is unsupported, maintaining that she can perform less than a full range of light work and thus cannot perform the jobs identified by the VE during the hearing. But as explained above, the ALJ's RFC determination is supported by substantial evidence. Moreover, although Vázquez contends that neither the VE nor the ALJ accounted for her symptoms of fibromyalgia and her need to change positions after twenty-five minutes, this is inaccurate. At the hearing, the ALJ only posed hypothetical questions to the VE involving an individual who would need to alternate positions at will. *See* Tr. 65-68.

Having reviewed the record as well as parties' briefs, I find no step five error that would merit reversal or remand.[5]

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 22nd day of March, 2021.

                         *S/ Bruce J. McGiverin*
                         BRUCE J. MCGIVERIN
                         United States Magistrate Judge

---

[5] The Commissioner's brief identifies an additional error at step five. *See* Dkt. 15 at 16-17. Vázquez has raised no argument related to this error, and I find, for the reasons stated in the Commissioner's brief, that this error is harmless.